IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THERESA RENEA HAYNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00858 |
| ) | Judge Frensley |
| KILOLO KIJAKAZI, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Theresa Renea Haynes brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's denial of her application for disability insurance benefits and supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal directly to the Sixth Circuit Court of Appeals. The Court has reviewed the administrative record, the briefs of the parties, and applicable law. Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

### I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on May 22, 2019, alleging onset of disability on October 15, 2018, due to major depressive disorder, osteoarthritis of the neck and knees, and a liver problem. Docket No. 10 ("TR"), pp. 77–78. The Social Security Administration denied Plaintiff's application both initially (TR 116–18) and upon reconsideration (TR 119–74). She subsequently requested a hearing before Administrative Law Judge ("ALJ")

Robert Martin, which was conducted on July 20, 2021. TR 34–55. At the time of the hearing, Plaintiff amended her onset date to March 1, 2020. TR 37–38. Plaintiff and vocational expert ("VE"), Ann Darrington Crane, appeared at the hearing and testified. TR 34.

The ALJ issued a decision unfavorable to Plaintiff on August 31, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 13–33. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since October 15, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical spine degenerative disc disease, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant can frequently climb ramps and stairs[;] never climb ladders[,] ropes[,] or scaffolds[;] frequently stoop, crouch, kneel, crawl, and balance; frequently reach bilaterally in all directions[,] including overhead[;] frequently handle, finger, and feel[;] frequent[ly] use [] hands for the operation of controls; [a]void concentrated exposure to extreme cold, work around hazardous machinery, moving parts, vibrations, and work at unprotected heights; limit[] [herself] to simple routine repetitive tasks and simple work[-]related decisions; can interact appropriately with supervisors, co-workers, and the general[] public; can adapt to occasional changes in the workplace; [and] can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day[.]

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 20, 1965[,] and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 19–27.

On October 19, 2021, Plaintiff timely filed a request for review of the hearing decision. TR 251–53. The Appeals Council issued a letter declining to review the case on August 22, 2022, thereby making the ALJ's decision the final decision of the Commissioner. TR 1–7. Plaintiff subsequently filed the instant action, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

3

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison Co.*, 305 U.S. 197 at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing

*Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based on the record." *Miller*, 811 F.3d at 833 (citing *Gentry*, 741 F.3d at 722 (internal citations omitted)); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 3(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

5. The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform given his or her age, experience, education, and residual functional capacity.

*See* 20 C.F.R. §§ 404.1520, 416.920; *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a non-exertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 C.F.R. § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281–82 (6th Cir. 1985). Otherwise, the grid cannot

be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and non-exertional, severe and non-severe. *See* 42. U.S.C. § 423(d)(2)(B).

### C. Analysis

Plaintiff's Motion for Judgment on the Administrative Record raises two assertions of error:

> 1. The ALJ's RFC determination is not supported by substantial evidence because he failed to properly account for his own finding as to Plaintiff's moderate limitations in concentration, persistence, and pace.
>
> 2. The ALJ's evaluation of Dr. Stephen K. Goewey's medical opinion runs afoul of 20 CFR §§ 404.1520c, 416.920c because the ALJ did not properly assess the opinion's consistency or supportability.

Docket No. 16-1, p. 5.

Accordingly, Plaintiff maintains that the Commissioner's decision should be vacated or remanded, or alternatively, for further administrative proceedings. *Id.* at 14. However, because substantial evidence exists to support the ALJ's finding that Plaintiff was not disabled, the Commissioner's decision must be affirmed.

1. **Residual Functional Capacity ("RFC")**

Plaintiff asserts that the ALJ "failed to account for any limitations associated in maintaining concentration, persistence, and pace in crafting the mental RFC," despite finding in step three of the sequential evaluation process (*supra* at 6) that Plaintiff suffered from moderate limitations in doing so. Docket No. 16-1, p. 7. Plaintiff argues that the ALJ's lack of explanation "for these blatantly contradictory findings" "runs afoul of agency rules and regulations, and leaves both Plaintiff and this Honorable Court to speculate the foundation of the ALJ's mental RFC." *Id.* at 9.

Defendant responds that no error exists in the ALJ's mental RFC finding, "as it properly accounted for Plaintiff's mental limitations by limiting her to simple work." Docket No. 18, p. 7. Moreover, Defendant argues that Plaintiff's allegation of error "has been addressed by the Sixth Circuit and the circuit has held contrary to Plaintiff's arguments." *Id.* at 6. Specifically, Defendant asserts that "[a]n ALJ's finding that an individual has the ability to perform a 'simple' job means that the 'simple' job can be performed without any limitations not specified in the residual functional capacity. The limitation to simple jobs means [Plaintiff] can perform that limited type of job without concentration problems." *Id.* at 6–7. Plaintiff then points to various cases within the Middle District of Tennessee that found that moderate concentration limitations may be accommodated by a restriction to simple work. *Id.* at 7.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of mental abilities in determining a claimant's RFC, the Regulations state:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental

> activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c).

The ALJ assessed the nature and extent of Plaintiff's mental limitations and restrictions on pages 5 and 6 of the ALJ Hearing Decision as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> . . .
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that she has limitations in concentrating generally, focusing generally, and following instructions. On the other hand, the claimant said that she is also able to drive, despite being fearful; can prepare elaborate meals[;] watch TV as a hobby[;] manage funds[;] and handle her own medical care, as there is no mention of her being consistently accompanied to any appointments or emergency room visits. Additionally, the record fails to show any mention of distractibility (Ex. B4E, Ex. B7E, Ex. B8E, Ex. B7F).

TR 20–21.

After full consideration of the opinion evidence, Plaintiff's mental consultative examination, and the other medical evidence, (TR 20–26), the ALJ determined that Plaintiff retained the RFC to perform "medium work as defined in C.F.R. 404.1567(c) and 416.967(c)," but with certain physical and mental limitations. TR 22. With regard to mental limitations, the ALJ determined that:

9

> the claimant can . . . limit[] [herself] to simple routine repetitive tasks and simple work[-]related decisions; can interact appropriately with supervisors, co-workers, and the general[] public; can adapt to occasional changes in the workplace; [and] can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day[.]

TR 22. The ALJ explained:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned has also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520(c) and 416.920(c).

TR 22.

As Defendant points out, the Sixth Circuit has found that an ALJ's limitation of a claimant to simple jobs means the claimant can perform those tasks without being affected by his or her moderate concentration limitations. Docket No. 18, p. 7 (citing *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436–37 (6th Cir. 2014)); *see, e.g.*, *Christy v. Kijakazi*, No. 3:22-cv-0509, 2023 WL 3001119, at *5 (M.D. Tenn. Jan. 24, 2023), report and recommendation adopted, No. 3:22-cv-509, 2023 WL 2992176 (M.D. Tenn. Apr. 18, 2023) (ALJ found moderate concentration limitations but opined that claimant would still be able to perform simple and detailed tasks). A finding of moderate concentration limitations at step three of the sequential evaluation analysis is not an RFC finding. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00A. Rather, the RFC finding is formulated at step four, which "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B and C" of the Listings to be considered at step three. SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996). Thus, by limiting Plaintiff to simple jobs, the ALJ did not err in failing to include moderate concentration limitations in the residual

functional capacity. *Wood v. Comm'r of Soc. Sec.*, No. 19-cv-1560, 2020 WL 618536, at *3 (6th Cir. Jan. 31, 2020). The Regulations do not require otherwise.

### 2. Reliance on Opinion Evidence

In his opinion denying benefits to Plaintiff, the ALJ described the assessment of Dr. Stephen K. Goewey as follows:

> Dr. Stephen K. Goewey[,] consultative examiner, opined on September 21, 2020[,] that the claimant will be able to sit between three and four hours daily, stand and walk at least two to three hours[] daily, [and] lift and carry at least 10 to 20 pounds. Limited grasping, pulling[,] and pushing as well as fine manipulation on nonpermanent basis with recommendation for additional supportive documentation (Ex. B8F). The undersigned finds that this opinion is unpersuasive because the evidence does not support these limitations. Specifically, there is no imaging to solidify the limitations in motion of multiple joints.

TR 26.

Plaintiff argues that the ALJ's analysis "do[es] not constitute an adequate consideration of the supportability and consistency factors" because "the ALJ failed to consider Dr. Goewey's abnormal examination findings." Docket No. 16-1, p. 12. Plaintiff further asserts that the ALJ's "focus[] solely on the absence of x-ray imaging to corroborate Dr. Goewey's findings" is "an analysis [that] cannot stand." *Id.* at 13.

Defendant responds that Plaintiff's "argument is based on a partial reading of the decision," as it "omits the consideration of [Dr. Goewey's] opinion at step two of the sequential evaluation when discussing severity." Docket No. 18, pp. 7, 8. Defendant asserts that the ALJ found some of Plaintiff's medical conditions to be non-severe at step two, which prevents these conditions from resulting in functional limitations for purposes of the RFCanalysis. *Id.* at 7, 9. Because these conditions do not result in functional limitations, there is no medically determinable impairment. *Id.* at 9. Consequently, Defendant argues that "[t]he ALJ cannot find that [Dr. Goewey's] opinion

supports functional limitations if the opinion is not based on a medically determinable impairment, as symptoms alone are insufficient." *Id.*

Plaintiff correctly points out that current regulations require ALJs to consider five factors in deciding the persuasiveness of a medical opinion, specifically addressing and explaining at least the first two in their analysis:

> **(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> **(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.
>
>> **(i)** **Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> **(ii)** **Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>>
>> **(iii)** **Purpose of the treatment relationship.** The purpose for the treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>
>> **(iv)** **Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).
>>
>> **(v)** **Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she

> examines you than if the medical source only reviews evidence in your folder.
>
> **(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> **(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c. The ALJ's discussion of supportability and consistency must be supported by an adequate explanation of the "persuasiveness" for all expert opinions, such that the appellate court may be provided with sufficient information to conduct a meaningful appellate review of the decision-making process. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544–45 (6th Cir. 2004). The courts must be able to read the decision and know what evidence the ALJ considered and understand why the ALJ reached a given result. *See id.* Whenever the agency reaches a decision that is unfavorable to a claimant, in whole or in part, the decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons." 42 U.S.C. § 405(b)(1).

However, the new regulations state that the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 C.F.R. § 404.1520c(a). The ALJ may properly:

> use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work. Other sources include but are not limited to:
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 C.F.R. § 404.1513d.

Here, the ALJ properly considered the opinion of Dr. Goewey and cited substantial evidence in determining that his opinion was inconsistent and unsupported. The ALJ pointed to the fact that, upon reviewing the consultative examination record from Dr. Goewey, "there was no mention of lumbar spine deficits and no imaging to support a medically determinable impairment that would cause lower back pain." TR 19–20. And while Dr. Goewey indicated the existence of "an antalgic gait on examination[] [of Plaintiff] and reported knee pain," there was "no imaging to solidify these complaints or justify abnormal findings." TR 20 (citing B8F at TR 682–84). A claimant bears the burden of proving that an impairment is severe, and the claimant must do so by showing that the impairment significantly limits his or her ability to perform basic work activities. *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 816 (6th Cir. 2020) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam)). Here, Plaintiff failed to meet this burden. The ALJ found that Dr. Goewey's opinion was not supported by imaging studies and was inconsistent with other evidence in the record. TR 19–20. Consequently, the ALJ found that Plaintiff's only severe physical impairment was her cervical spine degenerative disc disease. TR 19.

Moreover, an ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments. *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). Here, the ALJ incorporated the opinions of state agency consultants Dr. David Strand, Dr. Larry Welch, Dr. Howard Horsley, and Dr. Ok Yung. TR 25. After examining Plaintiff's medical records, each of

these consultants found that Plaintiff was "Not Disabled." TR 77–115, 119–174. These findings, in conjunction with other evidence in the record, provide the ALJ with "substantial evidence" to support his finding that Plaintiff was not disabled.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, the Plaintiff's Motion for Judgment on the Record is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

It is so **ORDERED**.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**